***NOT FOR PUBLICATION***

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CADER B. COX, III, as Administrator of the Estate of MARTHA COX, | : : : : | |
| Plaintiff, | : : | Civil Action No. 20-6779 (FLW) (LHG) |
| v. | : : | **OPINION** |
| JOHNSON & JOHNSON, et al., | : : | |
| Defendants. | : : | |
| CONNIE DENNEY, | : : : | |
| Plaintiff, | : : | Civil Action No. 20-6781 (FLW) (LHG) |
| v. | : : | |
| JOHNSON & JOHNSON, et al., | : : | |
| Defendants. | : : | |
| CHERYL SUMNER, | : : : | |
| Plaintiff, | : : | Civil Action No. 20-6825 (FLW) (LHG) |
| v. | : : | |
| JOHNSON & JOHNSON, et al., | : : | |
| Defendants. | : | |

| | | |
|---|---|---|
| CAROL FUST and DIETER FUST, | : : | |
| Plaintiffs, | : : | Civil Action No. 20-12394 (FLW) (LHG) |
| v. | : : | |
| JOHNSON & JOHNSON, et al., | : : | |
| Defendants. | : : | |
| SONNA GREGORY and WILLIAM GREGORY, | : : : | |
| Plaintiffs, | : : | Civil Action No. 20-10112 (FLW) (LHG) |
| v. | : : | |
| JOHNSON & JOHNSON, et al., | : : | |
| Defendants. | : : | |
| TAMMY WEAVER and STEVE, WEAVER, | : : : | |
| Plaintiffs, | : : | Civil Action No. 20-3744 (FLW) (LHG) |
| v. | : : | |
| JOHNSON & JOHNSON, et al., | : : | |
| Defendants. | : : | |

**WOLFSON, Chief Judge:**

These matters, six of the transferred-member cases in the Johnson & Johnson Talcum Powder Products multidistrict litigation ("MDL"), each come before the Court upon a motion to remand. Also pending in each of these cases are motions to dismiss for failure to state a claim filed by Defendant PTI Royston, LLC ("PTI Royston"). Plaintiffs argue that these matters should be remanded to state court because they share citizenship with PTI Royston, thus destroying diversity jurisdiction. The Johnson & Johnson Defendants, however, maintain that PTI Royston was fraudulently joined in these matters. Due to the common legal questions raised on these motions, and in the interest of efficiently and fairly managing these cases, the Court decides the six pending motions in this Opinion. For the reasons expressed herein, Plaintiffs' motions to remand are **DENIED**; and PTI Royston's motions to dismiss are **GRANTED**.

**I.  BACKGROUND**

Each of these cases originated in Georgia state court and was removed by the Johnson & Johnson Defendants to federal court. Thereafter, the United States Judicial Panel on Multidistrict Litigation transferred these matters to this Court to be included the MDL No. 2738, *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*. In each of these cases, Plaintiffs, who are all residents of the State of Georgia, filed complaints against Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc. ("JJCI") (together, the "Johnson & Johnson Defendants"), PTI Royston, and Cyprus Amax Minerals Company ("Cyprus") (collectively, "Defendants").[1] Plaintiffs assert the following claims against

---

[1] The Cyprus Defendants have filed for bankruptcy protection and, as such, this matter is stayed as to the Cyprus Defendants pursuant to the automatic stay imposed as a result of the petition. While Plaintiffs' claims against Cyprus Defendants are stayed based on the pending bankruptcy proceeding, the Cyprus Defendants' citizenship remains relevant in assessing diversity jurisdiction in these matters.

3

Defendants: (1) strict liability failure to warn, (2) strict liability based on design defect, (3) strict liability based on manufacturing defect, (4) negligent failure to warn, (5) negligent design and manufacture, (6) negligent misrepresentation, (7) fraud, misrepresentation, and concealment under OCGA § 51-6-2, (8) fraud by acts or silence under OCGA § 51-6-4, (9) intentional infliction of emotional harm, and (10) civil conspiracy.[2]  These claims arise from Martha Cox's, Connie Denney's, Cheryl Sumner's, Sonna Gregory's, Carol Fust's, and Tammy Weaver's diagnoses of ovarian cancer, which, as in all other member cases in this MDL, Plaintiffs allege were caused by regular, perineal use of Johnson & Johnson Baby Powder and Shower to Shower talcum powder products (the "Talc Products").  Indeed, Mrs. Cox alleges that she used the Talc Products on a daily basis for approximately 28 years until 1990, (Compl. ¶ 1, *Cox*, No. 20-6779); Ms. Denney alleges that she began using the Talc Products on a daily basis in 1970 and continued to do so until 1985, (Compl. ¶ 7, *Denney*, No. 20-6781); Ms. Sumner alleges that she used the Talc Products on a daily basis from 1970 to 2000, (Compl. ¶ 1, *Sumner*, No. 20-6825); Mrs. Fust alleges she used the Talc Products daily from 1949 to 1983, (Compl. ¶ 49, *Fust*, No. 20-12394); Mrs. Gregory alleges that she used the Talc Products on a daily basis from 1962 to 1990, (Compl. ¶ 49, *Gregory*, No. 20-10112); and Mrs. Weaver alleges that she used the Talc Products on a regular basis from 1970 to 1999, (Compl. ¶ 49, *Weaver*, No. 20-3744).

There is no dispute as to the citizenship of each Defendant.  The Johnson & Johnson Defendants are both New Jersey corporations with their principal places of business in New Jersey. *See, e.g.*, Compl. ¶¶ 5, 12, *Cox*, No. 20-6779.)  They are, thus, both New Jersey citizens for the purposes of diversity jurisdiction. *Lincoln Ben, Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d

---

[2] The *Cox*, *Fust*, *Gregory*, and *Weaver* Plaintiffs also assert claims for loss of services brought by Mr. Cox, Mr. Fust, Mr. Gregory, and Mr. Weaver.

Cir. 2015) ("A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business."). Before August 29, 2005, the Johnson & Johnson Defendants "manufactured, tested, screened, formulated, processed, assembled, packaged, labeled and distributed" the Talc Products from a Royston, Georgia processing facility. (*See, e.g.*, Compl. ¶ 63, *Cox*, No. 20-6779.) PTI Royston is a limited liability corporation that is incorporated in Delaware and has its principal place of business in Georgia. (*See, e.g.*, Compl. ¶¶ 21, *Cox*, No. 20-6779.) As an LLC, PTI Royston's citizenship—for the purposes of diversity jurisdiction—is determined by the citizenship of its members. *See Lincoln Ben, Life, Co.*, 800 F.3d at 105. The sole member of PTI Royston is another Delaware limited liability company, Broadview Investments, LLC ("Broadview"). (*See, e.g.*, Compl. ¶ 23, *Cox*, No. 20-6779.) Plaintiffs allege that the sole manager-member of Broadview is a citizen of Georgia. (*Id.*) In August 2005, PTI Royston acquired the Royston facility from the Johnson & Johnson Defendants and, thereafter, began manufacturing the Talc Products at the Royston facility. (*Id.* ¶¶ 61, 64.) Cyprus, which has filed for bankruptcy, supplied talc for the products manufactured by both the Johnson & Johnson Defendants and PTI Royston. (*Id.* ¶ 27.) Cyprus is a citizen of Arizona. (*Id.*)

Notwithstanding the fact that Plaintiffs all share citizenship with PTI Royston, the Johnson & Johnson Defendants removed these matters to federal court because, they contend, PTI Royston was fraudulently joined. (*See, e.g.*, Not. of Removal ¶¶ 10–15, *Fust*, No. 20-12394.) In that connection, the Johnson & Johnson Defendants maintain that Plaintiffs' claims against PTI Royston have no reasonable possibility of success under Georgia law because PTI Royston did not manufacture or sell the Talc Products that Plaintiffs allegedly used and that purportedly caused their ovarian cancer. (*Id.*)

5

## II. DISCUSSION

I first turn to Plaintiffs' motions to remand. Since I sit as the Transferee Judge in an MDL, I apply the procedural law of the Third Circuit. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. 03-20128, 2003 WL 21973329 at *2 (E.D. Pa. June 12, 2003) (citing *In re Korean Airlines Disaster*, 829 F.2d 1171, 1174 (D.C. Cir. 1987)). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court." The defendant seeking to remove the matter bears the burden of showing that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and (3) removal was proper. 28 U.S.C. §§ 1441, 1446, 1447; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). After a case has been removed, the district court, however, may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c).

As their basis for removal, the Johnson & Johnson Defendants contend that Plaintiffs intentionally named PTI Royston as a defendant to destroy diversity jurisdiction. Indeed, an exception to the requirement that removal be based solely on complete diversity is the doctrine of fraudulent joinder. *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). Where multiple defendants are named, but one or more are not of diverse citizenship from the plaintiff, "the diverse defendant[s] may still remove the action if [they] can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216. The Third Circuit has instructed "that joinder is fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Boyer,* 913 F.2d at

6

111 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (describing a claim as not colorable if it is "wholly insubstantial and frivolous"). Accordingly, a court's determination of fraudulent joinder does not focus on whether a plaintiff's claims are "plausible" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or Rule 12(b)(6), but rather it focuses on whether they are more than "frivolous." *In re Briscoe*, 448 F.3d at 218; *Batoff*, 977 F.2d at 852. To be clear, and importantly, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *In re Briscoe*, 448 F.3d at 218 (quoting *Batoff*, 977 F.2d at 852).

"If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer*, 913 F.2d at 111 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983)). In so doing, the court must "assume[ ] as true all factual allegations of the complaint," *Batoff*, 977 F.2d at 852 (citation omitted), "resolve all contested issues of substantive fact in favor of the plaintiff[,] and . . . resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer*, 913 F.2d at 111 (citation omitted).

The parties' arguments with respect to fraudulent joinder focus exclusively on whether Plaintiffs can state a colorable claim against PTI Royston for failure to warn under a theory of strict liability. Specifically, the Johnson & Johnson Defendants argue that Plaintiffs cannot state a colorable claim against PTI Royston for failure to warn because PTI Royston did not begin manufacturing the Talc Products until 2005, *after* each of the Plaintiffs in these cases stopped using the Talc Products. Plaintiffs, however, advance a novel theory of liability and contend that PTI

Royston, as a subsequent manufacturer of the Talc Products, assumed a duty to warn both past *and future* consumers of the Talc Products that use of the products increases a women's risk of ovarian cancer. (*See* Remand Br., *Fust*, No. 20-12394, at 17–18.)

"In a standard products liability premised on a failure to warn, Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). Relevant here, manufacturers have "a duty to warn consumers of potential dangers associated with the use of their product." *Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d 1368, 1377 (N.D. Ga. 2003). In other words, "[t]he chain of commerce that begins with the manufacturer and ends with the final consumer involves a series of special relationships," which "provide a basis for the affirmative duty to warn." *Id.*

Here, it is undisputed that Plaintiffs all ceased use of the Talc Products *prior* to 2005, before PTI Royston acquired the Royston facility from the Johnson & Johnson Defendants and began manufacturing the Talc Products for the Johnson & Johnson Defendants. Prior to 2005, the Talc Products were produced by the Johnson & Johnson Defendants. Nevertheless, Plaintiffs argue that, under Georgia law, "the duty to warn the public of defects in a product is continuous, even after that product has left the control of the manufacturer to be sold or distributed to the consumer," and thus, PTI Royston had a duty to warn Plaintiffs of the risks of using the Talc Products.[3] (*See* Remand Br., at 17, *Fust*, No. 20-12394.) Plaintiffs' position, however, has no basis in law. Indeed,

---

[3] Plaintiffs point to *Suzuki Motor of Am., Inc. v. Johns*, 830 S.E.2d 549, 557 (Ga. Ct. App. 2019) to support that their argument that PTI Royston had a continuing duty to warn Plaintiffs of the dangers of using the Talc Products. That reliance, however, is misplaced. While *Suzuki* supports Plaintiffs' position that a continuing duty to warn exists under Georgia law, *Suzuki* does not suggest that a subsequent manufacturer assumes a duty to warn past purchasers of a product of its danger. *See id.* at 192–93.

Plaintiffs point to no persuasive case law to support their theory that PTI Royston, a subsequent manufacturer, assumed the Johnson & Johnson Defendants' duty to warn of the potential dangers of talc use when PTI Royston took over manufacturing activities at the Royston facility.[4]

Indeed, the only case that Plaintiffs cite to that seemingly supports their theory is *Readdy v. Johnson & Johnson*, No. 20-733, 2020 WL 6115098 (N.D. Ga. Apr. 9, 2020). In *Readdy*, a Georgia plaintiff similarly asserted products liability claims against PTI Royston related to its manufacture of the Talc Products. *Id.* at *1. As here, the Johnson & Johnson Defendants removed the case to federal court, arguing that PTI Royston was fraudulently joined in the case and, thus, should not be considered for the purpose of evaluating diversity jurisdiction. *Id.* Specifically, the Johnson & Johnson Defendants, there, argued that PTI Royston could not be liable for plaintiff's claims as PTI Royston did not start manufacturing the Talc Products until 2005, 7 years after plaintiff ceased using the Products. The *Readdy* court declined to find PTI Royston fraudulently joined because

> Johnson & Johnson cannot satisfy its burden of proving Royston was fraudulently joined unless it can point to clear, binding authority from a Georgia appellate court that forecloses a claim against Royston. No such authority exists as to the precise issue presented in this case: whether PTI Royston, as a subsequent manufacturer of Johnson's® Baby Powder—the same product that caused the Plaintiff's cancer—owed a duty to warn previous purchasers of the product. At best, Johnson & Johnson can only point to an open issue of Georgia law. When a district court is faced with an uncertain state law issue on a motion to remand, the case should be remanded.

*Id.* at *3. I do not find the *Readdy* court's reasoning persuasive, and I am not bound by it. As discussed above, it is clear that Georgia law requires a special relationship between a manufacturer and the consumer for a duty to warn to attach. The *Readdy* court made no mention of this clear

---

[4] Plaintiffs do not argue that PTI Royston was the successor-in-interest for the Johnson & Johnson Defendants, or that it was somehow an alter ego of Johnson & Johnson.

requirement of Georgia law. Rather, the court focused on the fact that there was no authority that addressed the "precise issue" presented there. Such a showing, however, is not required to find a defendant fraudulently joined. *See, e.g.*, *Kallman v. Aronchick*, 981 F. Supp. 2d 372, 382 (E.D. Pa. 2013) (finding defendant's joinder was fraudulent where plaintiffs did not offer "any New Jersey case law to support a colorable cause of action for strict liability against" defendant).

Nevertheless, Plaintiffs further argue that Georgia law does not clearly foreclose a claim against PTI Royston, and as such, the Court must "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." (*See* Remand Br., at 17, *Fust*, No. 20-12394.) However, I do not find Georgia law to be unclear on this issue. As discussed above, it is well-settled that under Georgia law, the duty to warn of a potential danger associated with a product does not extend "beyond the manufacturer of the product in question." *Murphy*, 270 F. Supp. 2d at 1377; *see also Silver v. Bad Boy Enters. LLC*, 907 F. Supp. 2d 1351, 1357–58 (M.D. Ga. 2012) (finding defendants had no duty to warn of potential dangers associated with electric vehicle where they "neither manufactured nor sold the Vehicle in question"); *Coosa Valley Tech. College v. West*, 682 S.E.2d 187, 178 (Ga. 2009) ("[Plaintiffs] fail to cite authority for the proposition that the instructors, who neither sold nor manufactured the nail kit Nicole purchased, assumed a duty to provide warnings about a product purchased from a guest lecturer.").

For example, in *Silver*, the plaintiffs brought a products liability action which arose out of an accident that occurred while driving a 2008 Body Boy Buggy vehicle. 907 F. Supp. 2d at 1358. The *Silver* plaintiffs sued not only the manufacturer of the specific vehicle involved in the accident, but also various defendants that later "took over the manufacturing operations for Bad Boy Buggy vehicles." *Id.* at 1354. In granting the defendants' motion for summary judgment on plaintiffs' failure to warn claims against the subsequent manufacturers, the court noted that plaintiffs "cited

10

no authority for the proposition that a party who neither manufactured nor sold a product has a duty to warn of dangers associated with the product." *Id.* at 1358. Rather, the *Silver* plaintiffs made the novel argument that a duty to warn arose because "[d]efendants continued the manufacture of these vehicles upon the purchase of the [original manufacturer's] assets and because they assumed responsibility for: recalls of the vehicles. *Id.* The *Silver* court found the plaintiffs' theory was tantamount to "open-ended liability upon the . . . [d]efendants for vehicles they never manufactured, never sold, and never assumed liability for in their purchase of the manufacturer's assets." *Id.* As such, the court "decline[d] to adopt such an unsupported, novel, and far-reaching theory of liability and concluded that it is unlikely the Georgia courts would do so." *Id.*

Plaintiffs contend that *Silver* has limited weight on the fraudulent joinder inquiry because "the *Silver* court was obligated to make a ruling predicated on how a Georgia court would rule," (*See* Remand Br., at 16–17, *Fust*, No. 20-12394), whereas, here, the Court's inquiry is limited to whether Plaintiffs have raised a colorable claim for relief. Plaintiffs, however, have presented no such colorable legal ground to support a claim against PTI Royston. Indeed, Plaintiffs point to no case law to support their theory of liability and, instead, suggest that because their claim is purportedly novel, they should be permitted to defeat diversity jurisdiction. I do not agree. Plaintiffs present no legal support that suggests that a subsequent manufacturer may be held liable for a failure to warn individuals who never purchased or used products that *it* manufactured. Rather, Georgia products liability law is clear that "the duty to warn arises whenever the *manufacturer* knows or reasonably should know of the danger arising from use of *its* product." *Silver*, 907 F. Supp. 2d at 1357 (quoting *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1994)); *see also Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1355 (N.D. Ga. 2008) (observing that "a

11

manufacturer in Georgia can only be liable for strict products liability if it manufactured the allegedly harmful goods"). Put simply, Plaintiffs did not purchase or use any Talc Products manufactured by PTI Royston, and as a result, PTI Royston does not have a special relationship with Plaintiffs such that a duty to warn would arise. *See id.* at 1357–58; *Coosa Valley Tech. College v. West*, 682 S.E.2d 187, 178 (Ga. Ct. App. 2009) ("[Plaintiffs] fail to cite authority for the proposition that the instructors, who neither sold nor manufactured the nail kit Nicole purchased, assumed a duty to provide warnings about a product purchased from a guest lecturer."). Where Plaintiffs' claim against PTI Royston has no basis in law, it is "wholly insubstantial and frivolous." *See Batoff*, 977 F.2d at 852; *Kallman*, 981 F. Supp. 2d at 382. In other words, it is not a colorable claim.

Further indicating PTI Royston's fraudulent joinder is the lack of any reasonable possibility, as a matter of law, that Plaintiffs could establish the causation element of their claims against PTI Royston. Proximate causation is an essential element of each of Plaintiffs' claims. *See Fouch v. Bicknell Supply Co.*, 756 S.E.2d 682, 868 (Ga. Ct. App. 2014) (noting in products liability action, "[r]egardless of whether the plaintiff proceeds under a theory of negligence or strict liability, a plaintiff must prove as part of his case that the defendant's product was the proximate cause of the injuries alleged"); *Wilson Foods Corp. v. Turner*, 460 S.E.2d 532, 534 (Ga. Ct. App. 1995) ("When [products liability] suits are grounded on either a strict liability or negligence theory, proximate cause is a necessary element of the plaintiff's case.").[5] Georgia courts have held that:

---

[5] While the Court discusses causation in the context of Plaintiffs' products liability and negligence claims, Plaintiffs must also establish causation to proceed on their fraud and intentional infliction of emotional harm claims. *See Duke v. Galish, LLC v. Manton*, 662 S.E.2d 880, 885 (Ga. Ct. App. 2008) ("[A]n essential element of a fraud claim is proximate cause."); *Collier v. Kroger Co.*, 683 S.E.2d 625, 662 (Ga. Ct. App. 2009) ("A claim for intentional infliction of

> [u]nless the manufacturer's defective product can be shown to be the proximate cause of the injuries there can be no recovery. A manufacturer has the absolute right to have his strict liability for injuries adjudged on the basis of the design of his own marketed product and not that of someone else.

*Hoffman v. AC&S, Inc.*, 548 S.E.2d 379, 382 (Ga. Ct. App. 2001) (quoting *Davis v. Wells Aluminum Southeast*, 323 S.E.2d 215 (1984)). In other words, a plaintiff must allege that the product or products that allegedly caused her harm were, "in fact, manufactured or supplied by the defendants in [that] case." *Id.*; *see also Swicegood*, 543 F. Supp. 2d at 1355 ("[T]he language in *Hoffman* is sufficiently clear to say with confidence that a manufacturer in Georgia can only be liable for strict products liability if it manufactured the allegedly harmful goods."). For example, in *Swicegood*, plaintiff was injured as the result of an adverse reaction to the generic equivalent of the prescription drug Reglan. 543 F. Supp. 2d at 1354. In addition to bringing suit against the generic drug's manufacturer, plaintiff additional brought products liability and negligence claims against the drug's brand name manufacturer. *Id.* The district court dismissed both the strict liability and negligence claims against the brand name manufacturer because plaintiff did not allege that the brand name manufacturer manufactured the Reglan that caused her alleged injuries. *See id.* at 1355.

Here, each plaintiff alleges that if plaintiff "had been warned of the increased risk of ovarian cancer associated with the Talc Product, she would not have used, or would have discontinued her use of, the Talc Product." (Compl. ¶ 53, *Denney*, No. 20-6781; Compl. ¶ 53, *Cox*, No. 20-6779; Compl. ¶ 53, *Sumner*, No. 20-6825; Compl. ¶ 53, *Fust*, No. 20-12394; Compl. ¶ 53, *Gregory*, No. 20-10112; Compl. ¶ 53, *Weaver*, No. 20-3744.) It is undisputed that the

---

emotional distress has four elements: (1) intentional or reckless conduct (2) that is extreme and outrageous and (3) *causes emotional distress* (4) that is severe." (emphasis added)).

Plaintiffs in these cases all ceased using the Talc Products before PTI Royston acquired the Royston facility. As such, Plaintiffs cannot state colorable claims against PTI Royston because, simply put, they do not and cannot allege that the Talc Products they used were manufactured by PTI Royston; in that regard, PTI Royston could not have issued any talc warnings to these Plaintiffs that would have impacted their decisions to use the talc products.

Several Plaintiffs put forth a different theory of causation. Each of the *Denney*, *Gregory*, and *Fust* Plaintiffs alleges that had she "been warned of the increased risk of ovarian cancer associated with the Talc Product .she . . . would have sought early diagnosis and treatment for ovarian cancer." (Compl. ¶ 53, *Denney*, No. 20-6781; Compl. ¶ 53, *Gregory*, No. 20-10112; Compl. ¶ 53, *Fust*, No. 20-12394.) These conclusory allegations, however, do not help Plaintiffs assert a colorable claim against PTI Royston. Indeed, the *Denney*, *Gregory*, and *Fust* Plaintiffs fail to explain how they would have seen a warning placed on the Talc Products by PTI Royston years after each plaintiff ceased using the products. Nor do these plaintiffs provide any support for their allegation that seeing a doctor earlier would have resulted in an earlier diagnosis of ovarian cancer. This theory of causation is entirely speculative and, therefore, provides no reasonable basis for a claim against PTI Royston. *See McDermott v. CareAllies, Inc.*, 503 F. Supp. 3d 225, 238 (D.N.J. 2020) (observing that on fraudulent joinder inquiry "[t]he Court need only determine that there is a possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint" (quotation omitted)).[6]

---

[6] In their briefing, Plaintiffs argue that they can show proximate causation because, under Georgia law, the acts and omissions of multiple defendants can be considered the proximate cause of a plaintiff's injuries. *See Walker v. Giles*, 624 S.E.2d 191, 201 (Ga. Ct. App. 2005). This argument has no weight as it ignores the key issue here: whether the harms suffered by Plaintiffs can be reasonably attributed to conduct of PTI Royston.

In sum, Plaintiffs' Complaints demonstrate that PTI Royston joined in these actions solely for the purpose of defeating diversity jurisdiction. Plaintiffs all allege that they ceased using Talc Products before PTI Royston took over manufacturing duties from JJCI. In that connection, Plaintiffs fail to demonstrate any connection between the Talc Products that allegedly caused their ovarian cancer and the Talc Products manufactured by PTI Royston. Thus, a review of Plaintiffs' Complaints reveals that Plaintiffs are merely pursuing claims against PTI Royston to defeat diversity jurisdiction and that they have no real intention to prosecute the action against PTI Royston.[7] Rather, the proper defendants for Plaintiffs' claims are the Johnson & Johnson Defendants as those Defendants were responsible for manufacturing the Talc Products at the time they were used by Plaintiffs. Accordingly, I find that Plaintiffs have no colorable claims against PTI Royston and, thus, PTI Royston is fraudulent joined. Because I find that PTI Royston is fraudulently joined, I will also grant PTI Royston's motions to dismiss, which seek dismissal under Federal Rule of Civil Procedure 12(b)(6) on similar grounds.

---

[7] Plaintiffs suggest that their intent to prosecute their claims against PTI Royston is demonstrated by the fact their counsel "have filed over forty actions in Georgia against PTI (only seven of which were removed) and will continue to vigorously pursue claims against PTI to judgment in each case." (*See, e.g.*, Remand Br. at 24, *Fust*, No. 20-12394.) It is, however, of no moment that Plaintiffs' counsel are pursuing other cases against PTI Royston. Rather, the Court's analysis is focused on the four corners of the at-issue Complaints. Those Complaints alleges that Plaintiffs all used the Talc Products regularly *before* PTI Royston began manufacturing talc. No Plaintiffs here allege that they used any Talc Product that was manufactured by PTI Royston. Under these circumstances, there is no reasonable basis in law or fact for Plaintiffs' claims against PTI Royston. The fact that counsel continue to purse claims against PTI Royston does not transform a non-colorable claim to one with merit.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motions to remand are **DENIED**; and PTI Royston's motions to dismiss are **GRANTED**.  An appropriate Order accompanies this Opinion.


DATED: October 1, 2021                                             /s/ Freda L. Wolfson
                                                                  Freda L. Wolfson
                                                                  U.S. Chief District Judge